UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| David Francis Gay,<br>　　　　Plaintiff, | :<br>: |
| v. | : File No. 1:04-CV-289 |
| Correctional Medical<br>Services, Keith Tallon,<br>Tom Buck, and Melissa<br>Chenney,<br>　　　　Defendants. | :<br>:<br>:<br>:<br>: |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 27)

Plaintiff David Francis Gay, a Vermont inmate proceeding *pro se*, filed this action claiming that the defendants failed to provide him with adequate medical care after he was hit by a car. Gay initially moved for preliminary injunctive relief, claiming that 6 weeks after his injuries, which included a broken leg and a broken ankle, he was not yet receiving treatment. The defendants opposed the motion and submitted an affidavit from a treating physician stating that Gay was, in fact, receiving treatment and was expected to recover. The Court denied Gay's motion for injunctive relief. (Paper 24).

Approximately one year has passed since the Court denied the motion for injunctive relief. Since that

time, there has been no discovery and no substantive activity in the case other than a motion by the defendants for summary judgment. Consequently, the defendants are seeking summary judgment based upon essentially the same statements and affidavits submitted previously. The defendants also assert that Correctional Medical Services ("CMS") has not been the medical care contractor for the Vermont Department of Corrections since February, 2005. Although the defendants' motion is unopposed, I recommend that the motion (Paper 27) be DENIED for the reasons set forth below.

## Background

On September 13, 2004, Gay was "run over by a car on interstate 91 at a high speed." (Paper 6 at 1). He was subsequently treated in the emergency room of a hospital in Hartford, Connecticut, where he was told that he had a broken left ankle and a broken right leg. Because his legs were too swollen for a cast, the emergency room doctor placed his leg in a temporary splint and directed that he be x-rayed and placed in a permanent cast within 72 hours. For pain management, Gay was prescribed Percocet. The doctor's recommendations and diagnoses,

which included head trauma and other injuries, were written on "a standard Hospital Referral Form and after care form. [Gay] was not given a copy of this form, but watched the physician write this out and give it to the officer." Id.

At some time shortly after his accident, Gay was placed in the Southern State Correctional Facility in Springfield, Vermont. In the weeks following the accident, and despite the emergency room doctor's instructions, Gay was never returned to a hospital and his legs were never placed in a cast. (Paper 6 at 1). In an affidavit dated October 9, 2004, Gay further attested that he had "complained of back and spinal problems sence [sic] this acciedent [sic] and has lost all feeling in [sic] left arm and has little or no use in this lim [sic] because of this injury the pain is so bad that plaintiff can't move, yet no pain relief is given besides asprin [sic] . . . ." Id.

Gay's statements of fact are supported by his prison grievance filings. On September 26, 2004, Gay filed a Grievance Form #1 stating that CMS had not yet put him in a cast and had not provided him with the prescribed pain

medication. Gay also wrote that he had given "the nurse and Tom Buck the paper work from hospital (physicians orders) and they still refuse to obey them -- I'm in pain and my legs hurt very much and my back and arm." (Paper 9 at 6). That same day, Gay submitted a Correctional Medical Services Health Services Request Form ("CMS Form") stating that "my back hurts bad - my arm is numb - I have noise [sic] bleeds and my legs need caste [sic] still they hurt bad when I try to sleep at night." Id. at 8.

Gay filed another CMS Form on September 27, 2004, stating that "[m]y legs are very painful please put cast on them I can't sleep because of the pain - also my back and arm are hurting bad - why have you cut of [sic] pain medication?" Gay filed similar CMS Forms on September 28 and 29, 2004. On September 30, 2004, Gay filed another Grievance Form #1 in which he requested that the Department of Corrections ("DOC") review CMS's treatment policy "and the lack of services that they give to inmates . . . ." Specifically, Gay inquired as to how the medical care providers could ignore his injuries and only provide him aspirin for pain. Id. at 12.

4

On October 5, 2004, Gay filed a third Grievance Form #1, again complaining that he was being denied treatment for his broken bones, back problems and nose bleeds. He also complained that he was being forced to travel around the compound on his broken legs, and that when he said anything about his pain the head nurse would take away his medication. Id. at 13.[1] Also on October 5th, in a separate Grievance Form #1 directed to the attention of defendant Keith Tallon, Gay requested that Tallon, as prison superintendent, "do a follow up" to see why 21 days had passed since the accident yet no treatment had been provided. Id. at 14.

In a Grievance Form #1 dated October 6, 2004, Gay stated that a doctor had ordered medication to be delivered to him in his cell. The purpose of the October 6th grievance was to complain that the medication was not being delivered as ordered. Id. at 18. On October 13, 2004, Gay submitted another Grievance Form #1, stating that although CMS had x-rayed his back two weeks before, an x-ray was an inadequate diagnostic tool for a back

---

[1] Gay refers to the head nurse as "Millisa," and the Court presumes that this person is defendant Melissa Cheney.

5

injury. Gay therefore requested a "cat scan" and "other scans" and treatment by a back specialist. Id. at 20.

On October 14, 2004, Gay submitted yet another Grievance Form #1, this time complaining generally about the fact that a cast for his legs was prescribed on September 13, yet nothing had been done and no adequate pain relief had been offered. Id. at 21. Gay submitted a similar claim on a CMS Form the next day (October 15, 2004), stating that his request was the "[s]ame as last 8 request [sic] - back, arm are still killing me and what about cast on broken leg from 9-13-04 (numb feeling in left arm, Back hurts like hell)." Id. at 22. On October 16, 2004, Gay requested on a CMS Form: "Please tell me when I am going to get cast put on leg so I know this pain is killing me and unbarrable [sic] - the physician ordered this done three times since 9-13-04." Id. at 23.

On October 18, 2004, Gay submitted a CMS Form in which he claimed to have fallen and hurt his already-injured leg. He asked that someone check the leg as he feared that he had aggravated the injury. He also wrote a note on the top of the form stating that he would stop

6

submitting complaints if someone would tell him "they have them and I'm on a list." Id. at 24.

Gay's final grievance form, submitted on a Grievance Form #3, was dated October 23, 2004. In this submission, Gay summarized his situation and referred back to his September 30, 2004 Grievance Form #1 in which he had complained of a lack of medical treatment. Gay explained that despite 15 requests and nine grievances, he still had not been placed in a cast. "I have been threw [sic] extreme pain and suffering and as a human I can't mentally start to figure how and why this would not be addressed . . . . [T]his is plan [sic] deliberate cruelty." Id. at 25. Gay filed his motion for injunctive relief, which this Court construed as both a motion and a complaint, on October 26, 2004.

In his preliminary injunction motion, Gay reported that he had not received the prescribed x-rays of his legs, and that neither leg had been placed in a cast. (Paper 5 at 1). Gay also claimed that complaints of back and spinal problems had been ignored, and that he had lost feeling in his left arm. (Paper 6 at 1). In a subsequent motion for medical treatment, filed by

7

counsel[2] on November 4, 2004, counsel asserted that Gay had been "suffering from injuries to his cervical region, thoracic/lumbar region, . . . numbness and loss of use of his left arm, fracture of his right leg and an injury to his left ankle. To date the only injury which has been addressed is [Gay's] right leg." (Paper 9 at 1).

In response to Gay's motions for medical treatment, the defendants submitted an opposition memorandum and the affidavit of John A. Leppman, M.D. (Paper 20, attached Affidavit). In his affidavit, dated November 10, 2004, Dr. Leppman stated that he had seen "Mr. Gay several times since his incarceration in the Springfield facility." With respect to Gay's leg injury, Dr. Leppman concurred with Gay's description of the injury as a fracture, and stated that he had "referred Mr. Gay to Connecticut Valley Orthopaedics and Sports Medicine in Springfield." At the time of Dr. Leppman's affidavit, Gay was reportedly "wearing a boot device" prescribed by Connecticut Valley Orthopaedics and Sports Medicine. Dr.

---

[2] After Gay filed his initial motion for a preliminary injunction *pro se*, he retained counsel. Counsel filed the subsequent motion for emergency relief (Paper 9), but has since withdrawn from the case. Thus, Gay is again proceeding *pro se*.

8

Leppman further stated that he had reviewed the records of Gay's orthopaedic care and that those records "show that there is good alignment and that he is in the process of recovery."

Dr. Leppman also addressed Gay's claims of cervical and thoracic spine injuries, stating that he had personally examined Gay's back and reviewed his x-ray reports. He subsequently "ruled out any bone injuries of the spine. At this time it is my opinion that the source of back problems reported by Mr. Gay are likely soft tissue." Dr. Leppman reportedly ordered physical therapy to treat Gay's back pain.

In response to Gay's complaint about his left arm, Dr. Leppman evaluated the arm and concluded that "Mr. Gay may have suffered some peripheral nerve damage which in due course will likely recover. My most recent examination shows that he has been improving the range of motion of his arm." Dr. Leppman concluded his affidavit by stating that "[i]n my opinion Mr. Gay's needs in terms of the necessary care have been met." Dr. Leppman did not directly address Gay's care, or lack thereof, between September 13, 2004 and November 9, 2004.

9

After the Court issued its order (dated March 29, 2005) denying preliminary injunctive relief, there was no substantive activity in the case prior to the defendants' summary judgment filing. On April 8, 2005, the Court issued a discovery order requiring discovery to be closed on November 1, 2005, and dispositive motions to be filed by November 15, 2005. The docket sheet does not reflect any discovery activity by either party prior to November, 2005. Consequently, on November 15, 2005, the defendants filed a motion for summary judgment arguing that Gay has insufficient evidence to support his claims, and that, in any event, defendant Correctional Medical Services ceased providing medical services to Vermont inmates as of February, 2005. (Paper 29, Shahi Affidavit).

## Discussion

I. Summary Judgment Standard

Summary judgment should be granted only when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that there is no genuine issue of material

fact. See Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002); Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (stating that movant may meet burden by "point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim."). Once the movant satisfies this burden, the non-moving party must respond by setting forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In determining whether summary judgment is appropriate, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 126 (2d Cir. 2004).

The fact that a motion for summary judgment is unopposed does not necessarily mean that it should be granted. "[T]he district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373

F.3d 241, 244 (2d Cir. 2004). "In addition, *pro se* litigants must be given extra latitude, particularly on a summary judgment motion." Thomas v. New York State Dep't of Corr. Servs., 2006 WL 435718, at *4 (S.D.N.Y. Feb. 23, 2006) (citing McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (*pro se* pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest")).

II. Eighth Amendment Standard

Prisoners have a constitutional right, secured by the Eighth Amendment, to be free from cruel and unusual punishment. Cruel and unusual punishment in the context of prison medical care has been defined as deliberate indifference to serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); Smith v. Carpenter, 316 F.3d 178, 183 (2d Cir. 2002); Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). The Second Circuit has held that "'the Eighth Amendment forbids not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain.'" Brock v. Wright, 315 F.3d 158, 163 (2d Cir. 2003) (quoting Todaro

12

v. Ward, 565 F.2d 48, 52 (2d Cir. 1977)).

There are two elements to a claim of deliberate indifference. First, the deprivation suffered must be objectively serious such that "a condition of urgency, one that may produce death, degeneration, or extreme pain" exists. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotations and citations omitted). The second requirement is that defendants acted with a culpable state of mind. This subjective element requires the plaintiff to prove that a defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). A showing of negligence by the defendants is not enough for a deliberate indifference claim. See Estelle, 429 U.S. at 106 (stating that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"). Instead, the plaintiff must prove that the defendants acted with a state of mind "equivalent to criminal recklessness." Hemmings v. Gorczyk, 134 F.3d 104, 109 (2d Cir. 1998) (internal quotations omitted).

III. Gay's Treatment

Viewing the facts in a light most favorable to the

13

plaintiff, Gay did not receive a cast for his legs within the 72 hours recommended by the emergency room physician at the Hartford, Connecticut hospital. In fact, Gay did not receive treatment for his leg, ankle or other injuries for weeks after his accident. Gay also reports that he was in significant pain during this time, and that the only medication provided to manage the pain was aspirin.

With respect to the first element of a deliberate indifference claim, the facts viewed in a light most favorable to Gay suggest that he was in extreme pain for a significant period of time due to a delay in treatment. When a prisoner complains of delayed treatment, he must show "an act or failure to act that evinces 'a conscious disregard of a substantial risk of serious harm.'" Thomas v. Nassau County Corr. Ctr., 288 F. Supp. 2d 435, 440 (S.D.N.Y. 2000) (quoting Chance, 143 F.3d at 703)). At least one court has held that a broken leg constitutes a serious condition under the Eighth Amendment. See Mitchell v. Fairman, 1996 WL 420294, at *6 (N.D. Ill. 1996). Furthermore, the Second Circuit has acknowledged that continued and extreme pain may provide a basis for

an Eighth Amendment claim. See, e.g., Hathaway, 99 F.3d at 553. It is also arguable that the defendants' failure to treat Gay served to "cause or perpetuate" his pain. Todaro, 565 F.2d at 52.

Gay's evidence also demonstrates that the defendants were on notice of his complaints. Numerous request forms were submitted to CMS. At least one grievance was directed specifically to defendant Keith Tallon. Defendant Tom Buck is named on more than one grievance as a person who ignored Gay's complaints. Finally, Gay complained in writing that defendant Melissa Cheney was taking away his medication when he complained of pain. The assertion that the defendants were on notice of Gay's situation, yet repeatedly failed to act on his behalf, presents a triable issue of fact on the question of deliberate indifference.

The defendants have failed to carry their burden of showing that these issues may be resolved as a matter of law. Instead, they submit that the factual record at the preliminary injunction stage was sufficient to support a summary judgment ruling. The defendants' entire legal argument in support of summary judgment is that the

15

Court's ruling on the preliminary injunction motion "noted that there was insufficient evidence to support plaintiff's claim for improper deprivation of medical care under applicable legal theories of recovery." (Paper 27 at 2-3). The defendants also note that Gay has not amended his pleadings, and that CMS is no longer providing services to Vermont prisoners. The defendants' argument ignores the significant differences between a prisoner plaintiff's motion for a preliminary injunction and defendant's motion for summary judgment.

The primary purpose of a preliminary injunction motion is to address a situation that, if it continues, will result in irreparable harm. In this case, the affidavit of Dr. Leppman stated that Gay was currently receiving care, that the care would be ongoing, and that Gay's medical needs had been met. Dr. Leppman did not address the alleged delay in treatment, and any injury arising out of that delay was not an issue before the Court. Based upon Dr. Leppman's undisputed statements, the Court denied Gay's motion.

The Court also found that Gay had not provided sufficient evidence to show that he was likely to succeed

16

on the merits. It is, presumably, this finding that the defendants are relying upon in their summary judgment motion. At summary judgment, however, the non-moving party carries a lesser burden than he does in a motion for a preliminary injunction. Indeed, at summary judgment it is the defendants who must first show the absence of a triable issue of fact. For the reasons discussed above, the defendants have failed to carry this burden.

When a prisoner files a motion for a preliminary injunction, his burden is substantial. This is particularly true when he is asking for a mandatory injunction compelling someone to take action. In such a case, the prisoner must make a "clear showing" that he is entitled to relief. <u>Phillip v. Fairfield Univ.</u>, 118 F.3d 131, 133 (2d Cir. 1997). Relief is warranted on a motion for a preliminary injunction only when the movant has shown that he will suffer irreparable harm absent injunctive relief and either (1) that he is likely to succeed on the merits of his claim, or (2) that there are sufficiently serious questions going to the merits to make them fair grounds for litigation, and that the

17

balance of hardships tips decidedly in favor of the moving party. See Wright v. Giuliani, 230 F.3d 543, 547 2d Cir. 2000). If the plaintiff is a prisoner, the Prison Litigation Reform Act limits the relief available to remedies that are "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

In its decision on the preliminary injunction motion, the Court concluded that based upon the limited record presented, Gay had failed to carry his burden of clearly showing that "the defendants knew of and yet disregarded an excessive risk of serious harm, or that they acted recklessly." In reaching its conclusion, the Court was not required to view the facts in a light most favorable to the plaintiff, or to determine whether the defendants had shown the absence of triable issues of fact. Viewing the facts now under a summary judgment lens, the Court concludes that even without any new evidence, Gay has presented enough facts for a reasonable juror to find in his favor.

18

Specifically, Gay's statements in his affidavit and his supporting documents arguably show that both CMS and prison officials were aware of his lack of treatment. While Dr. Leppman's statement that Gay's medical needs "have been met" could be viewed as dispelling claims of either negligence or deliberate indifference, the statement could also be read as saying that as of November 10, 2004, Gay's needs were being met. Viewed in Gay's favor, Dr. Leppman's affidavit did not address the weeks prior to November 10, 2004. Therefore, at summary judgment, the Court should find that triable issues of fact remain for the period(s) when Gay was not receiving the necessary medical care.

Furthermore, the defendants' assertion that CMS ceased providing services to Vermont inmates in February, 2005 has little bearing on the summary judgment issue. The record indicates that Gay's suffering occurred primarily between September and November, 2004. CMS does not dispute that it was the contractor for medical services during that time period. Furthermore, it is not clear that all of the defendants were CMS employees. Therefore, the fact that CMS ceased its contractual

19

duties in February, 2005 may merely limit the exposure of CMS and its employees for injuries after that date. It does not entitle CMS to summary judgment.

## Conclusion

For the reasons set forth above, I recommend that the defendants' motion for summary judgment (Paper 27) be DENIED. The parties are hereby ORDERED to produce to the Court within 30 days of the date of this Report and Recommendation copies of all medical records relevant to the injuries Gay suffered in his September 13, 2004 accident.

Dated at Burlington, in the District of Vermont, this 24th day of March, 2006.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).